```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/29/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYDIA JOY,

                              Plaintiff,

        -against-

CRIME VICTIMS TREATMENT CENTER
(CVTV),

                              Defendant.

23-CV-11177 (MMG)

**ORDER ADOPTING
REPORT &
RECOMMENDATION**

MARGARET M. GARNETT, United States District Judge:

On December 2, 2024, the Honorable Sarah L. Cave issued a Report and

Recommendation (the "R&R") recommending that the Court grant in part and deny in part

Defendant CVTC's motion to dismiss the complaint.[1]  Dkt. No. 24.  Specifically, Judge Cave

recommended that: (1) Plaintiff's Title VI Claim be dismissed without prejudice and with leave

to amend to address identified deficiencies; (2) Plaintiff's Title VII Claim be dismissed with

prejudice and without leave to amend; (3) CVTC's motion to dismiss be denied as to the Section

1981 Claim; and (4) Plaintiff's NYSHRL and NYCHRL Claims be dismissed with prejudice.

*See* R&R at 21.

A district court reviewing a report and recommendation addressing a dispositive motion

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1); *see also Bradley v. Comm'r of Soc. Sec.*, No. 12-CV-

7300, 2015 WL 1069307, at *1 (S.D.N.Y. Mar. 11, 2015) (same).  Under 28 U.S.C. § 636(b)(1)

and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the magistrate

---

[1] The R&R, which is appended to this Order for ease of reference, describes in detail the facts and
procedural history of this case.

1

judge's report and recommendation.  When a party submits timely and specific objections to a report and recommendation, the court is required to make a *de novo* determination of those portions of a report to which objection is made, 28 U.S.C. § 636(b)(1)(C), by reviewing "the Report, the record, applicable legal authorities, along with [the] objections and replies." *Bandhan v. Lab. Corp. of Am.*, 234 F.Supp.2d 313, 316 (S.D.N.Y.2002).  However, where a party's objections are "conclusory or general," or where the party "simply reiterates its original arguments," the report should be reviewed only for clear error.  *Walker v. Vaughan*, 216 F.Supp.2d 290, 292 (S.D.N.Y.2002) (quoting *Barratt v. Joie*, No. 96-CV-0324 (LTS) (THK), 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); *accord Cartagena v. Connelly*, 06-CV-2047 (LTS) (GWG), 2008 WL 2169659, at *1 (S.D.N.Y. May 23, 2008).  Furthermore, the district court "may adopt those portions of the ... report to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)); *see also Alverio v. Colvin*, No. 13-CV-4722, 2015 WL 1062411, at *1 (S.D.N.Y. Mar. 9, 2015) ("When the parties make no objections to the [r]eport [and recommendation], the [c]ourt may adopt [it] if there is no clear error on the face of the record." (internal references omitted)).

Defendant CVTC filed timely objections to the R&R.  Dkt. No. 25 (the "Objections").  CVTC objects to the R&R only insofar it recommends this Court not dismiss Plaintiff's claim under 42 U.S.C. § 1981, and expressly disclaimed objections to all other recommendations by Judge Cave.  *See* Objections at 1.  On December 16, 2024, Plaintiff submitted a response to the Objections.  Dkt. No. 26 (the "Response").

The Court has reviewed those aspects of the R&R that were not the subject of any objection for clear error and finds none. *See Braunstein v. Barber*, No. 06-cv-5978, 2009 WL 1542707, at *1 (S.D.N.Y. June 2, 2009) (explaining that a "district court may adopt those portions of a report and recommendation to which no objections have been made, as long as no clear error is apparent from the face of the record."). Moreover, the Court has reviewed *de novo* those aspects of the R&R that were the subject of the Objections. Having reviewed the record, the parties' submissions in connection with the Defendant's motion to dismiss, the R&R, the Objections, and the Response, the Court agrees with Judge Cave's thoughtful and well-reasoned analysis and conclusions in full and therefore ADOPTS THE R&R IN ITS ENTIRETY.

For the reasons articulated in the R&R, CVTC's motion to dismiss the complaint is GRANTED in part and DENIED in part as follows: (1) Plaintiff's Title VI Claim is DISMISSED WITHOUT PREJUDICE and with leave to amend to correct the deficiencies identified in pages 11-14 of the R&R; (2) Plaintiff's Title VII Claim is DISMISSED WITH PREJUDICE and without leave to amend; (3) CVTC's motion to dismiss is DENIED as to Plaintiff's Section 1981 Claim; and (4) Plaintiff's NYSHRL and NYCHRL Claims are DISMISSED with prejudice and without leave to amend.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. No. 12 and mail a copy of this Order to Plaintiff.

Dated: January 29, 2025
      New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYDIA V. JOY,<br><br>                              Plaintiff,<br><br>       -v-<br><br>CRIME VICTIMS TREATMENT CENTER,<br><br>                              Defendant. | CIVIL ACTION NO. 23 Civ. 11177 (MMG) (SLC)<br><br>**REPORT AND RECOMMENDATION** |

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE MARGARET M. GARNETT**, United States District Judge:

## I. INTRODUCTION

Pro se Plaintiff Lydia V. Joy asserts race and national origin discrimination and retaliation claims against Defendant Crime Victims Treatment Center ("CVTC"), which she alleges wrongfully terminated her from a professional development training program.   (ECF No. 1 (the "Complaint")).   CVTC now moves to dismiss the Complaint for failure to state a claim (ECF No. 12 (the "Motion")), which Ms. Joy has opposed.   (ECF No. 18 (the "Opposition")).   For the reasons set forth below, we respectfully recommend that the Motion be GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A.  Factual Background

The following facts are summarized from Ms. Joy's Complaint and Opposition, the allegations of which the Court accepts as true for purposes of the Motion.   See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013); Caraballo v.

Dep't of Corrs. of City of N.Y., No. 22 Civ. 971 (JLR), 2022 WL 16555313, at *1 (S.D.N.Y. Oct. 31, 2022); see also Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in [her] papers opposing the motion.").[1]

### 1.  The Parties

Ms. Joy, who is originally from Paraguay and whose primary language is Spanish, identifies as Hispanic.  (ECF No. 1 ¶ 2).  In December 2021, she obtained a community health worker certification from LaGuardia Community College, where she was valedictorian of her graduating class.  (Id. ¶ 3).  Since March 2022, Ms. Joy has been employed at Lenox Health Greenwich Village Emergency Department (the "ED") as an Outreach Services Associate in the Infectious Diseases Department.  (Id. ¶ 4).  In her position in the ED, where she "was employed [] during all relevant times . . . to the present[,]" Ms. Joy worked as a health educator and counselor in the HIV program.  (Id.)

CVTC is "a recipient of federal and state funding" that provides training in rape crisis and domestic violence advocacy.  (Id. ¶¶ 1, 28).

### 2.  The Training Program

At some point, one of Ms. Joy's co-workers reported to the ED Director that she was impressed with Ms. Joy's work and recommended that she be added to a special team for sexual assault survivors, known as the "SAFE Team."  (Id. ¶ 5).  To join the SAFE Team, Ms. Joy needed to complete "special training."  (Id. ¶ 7).  A social worker in the ED referred Ms. Joy to CVTC's Rape Crisis and Domestic Violence Advocate Training and Certification (the "Training Program"),

---

[1] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

which the social worker had completed herself "without incident." (Id. ¶ 8). If she completed the Training Program and joined the SAFE Team, Ms. Joy anticipated applying to the National Advocate Credentialing Program ("NACP") to become a bilingual sexual assault case manager or bilingual counselor, higher paying positions that would involve counseling, serving as a case manager for survivors, managing a clinical case load, developing plans with survivors, assisting in legal matters, and making referrals. (Id. ¶ 6). Ms. Joy's "employer"—i.e., the ED—approved her participation in the Training Program. (Id. ¶ 9).

Ms. Joy registered for the Training Program with the goal of becoming an Advocate within one year. (Id. ¶ 10). She "complied with all the processes from the interview, disclosed medical forms and information forms [to] CVTC, [and] signed up in their App," among other tasks. (Id. ¶ 11). On September 26, 2022, Ms. Joy interviewed with CVTC's Community Programs Coordinator and one of its social workers. (Id. ¶ 15). The same day, CVTC sent Ms. Joy an acceptance letter that listed the dates on which she was to attend a total of 40 hours of training. (Id. ¶ 16). On September 29, 2022, Ms. Joy returned by email "the procedures and legal documentation" required to enter the Training Program, including medical records, a photograph, a copy of a photo identification, "Mount Sinai ED" forms, and a HIPAA release. (Id. ¶ 17). Ms. Joy then received a copy of CVTC's manual and training materials along with credentials and access to CVTC's "app." (Id. ¶ 18–19). Ms. Joy believes that she had an agreement with CVTC to provide her with 40 hours of advocate training. (Id. ¶ 28).

On October 6, 2022, Ms. Joy participated in her first session of the Training Program, which ran for three hours, and the next day, was introduced to her CVTC mentor. (Id. ¶¶ 20–21). Following an additional eight hours of training on October 8, 2022, Ms. Joy corresponded with

3

her mentor, who informed her that "[o]ne of the most critical parts of the training was 'role plays'" that practiced introductions to survivors to form "an emotional connection[.]" (Id. ¶ 21).  Ms. Joy "completed all her role plays in English and had good feedback[.]" (Id. ¶¶ 21–22). Ms. Joy participated in further training and role play sessions on October 9 and 12, 2022.  (Id. ¶¶ 22, 23, 25).   During the role play session on October 12, 2022, CVTC's Clinical Director commented to Ms. Joy, "I can only imagine how difficult it is for you because your primary language is Spanish[,]" and "[t]his is difficult for you because of the lack of emotional connection with the survivor due to the language barrier." (Id. ¶¶ 25–26).  Another trainee who is white performed the same role play as Ms. Joy and received positive feedback, while Ms. Joy did not. (Id. ¶¶ 29, 33).  Ms. Joy viewed Ms. Karp's comments as racist microaggressions. (Id. ¶¶ 25–26).  Based on the Clinical Director's comments, Ms. Joy believes that "CVTC only accepts survivors whose primary language is English into the program[.]" (Id. ¶ 27).

On October 13, 2022, Ms. Joy participated in another role play session, following which she was told "not to return for the last 16 hours of training" and her profile was removed from the CVTC App without explanation.  (Id. ¶¶ 32, 41–42, 45).   Ms. Joy believes that she was dismissed "because her first language is not English." (Id. ¶ 31).  Ms. Joy reported her dismissal from the Training Program to her supervisor in the ED, who commented that "her employer paid for the hours and the fact that she was dismissed from the training 'did not look good' in her record." (Id. ¶ 34).  The ED, concerned that Ms. Joy would no longer qualify for the SAFE Team position, planned to open an investigation and request information from CVTC. (Id.)

On October 15, 2022, Ms. Joy inquired of CVTC's Operations Director and Head of Human Resources the reason for her dismissal from the Training Program.  (Id. ¶ 45).  Later the same

day, she received a response from CVTC's Community Programs Coordinator that discussed the

importance of background checks for all CVTC volunteers and stated that:

> [d]uring our initial phone call, I asked whether you were taking the CVTC training
> in your capacity as an [ED] employee or if you had planned to become a CVTC
> advocate.  You answered that you had hoped to become a CVTC
> advocate.  Previous [ED] staff who enrolled in our training did so in their capacity as hospital
> staff and community partners, with no plans to go on call as CVTC advocates.
> Because you stated you were taking the training of your own volition, you were
> held to the same standard as every volunteer candidate that goes through our
> program.  Based on our concerns, we determined that it would not be appropriate
> for you to complete training this year and become an advocate with CVTC.  I'm
> happy to have a conversation with you next week to go further into how we came
> to this decision.
> I understand this news is difficult to hear, but we have been clear since Day 1—as
> well as in your advocate interview—not everyone who is invited will complete
> training or become a CVTC advocate.

(Id. ¶ 46 (the "Oct. 15 Email")).  Ms. Joy asserts that, contrary to the Oct. 15 Email, she told CVTC

that she was participating in the Training Program "for the opportunity the certification would

provide to be part of the [SAFE Team] at [the] ED."   (Id. ¶ 47).  Ms. Joy alleges that CVTC's

explanation for her dismissal "is pretextual and that the true reason for being terminated from

the [T]raining [Program] was based on race and national origin discrimination."  (Id.)  Ms. Joy

responded to the Oct. 15 Email with additional questions regarding her dismissal, but did not

receive a response from CVTC, which she believes "constitutes an adverse inference that her

dismissal . . . was based on her race and national origin[.]"  (Id. ¶¶ 48–49, 52).  Later in October,

she received from CVTC a box of "gifts" including water bottles and phone accessories, which she

sent back, believing them to be "some sort of bribery to not speak up about her unlawful

termination from the [T]raining [P]rogram[.]"  (Id. ¶¶ 50–51).

As a result of her dismissal from the Training Program, Ms. Joy was "prevented [] from

pursuing a more senior position with better benefits" in the ED and "was mortified and scared

that her employer [the ED] might terminate her[.]" (<u>Id.</u> ¶¶ 35–37; <u>see</u> <u>id.</u> ¶ 41).  After her

dismissal, Ms. Joy sought medical attention and counseling.  (<u>Id.</u> at 14).

**B.  <u>Procedural Background</u>**

On December 9, 2022, Ms. Joy filed a complaint with the New York State Division of

Human Rights ("NYSHR") and the United States Equal Opportunity Commission ("EEOC").  (ECF

No. 1 ¶ 53).  During discovery in these administrative proceedings, CVTC disclosed that of the

63 people who participated in the Training Program, 55 are of United States origin and eight from

other national origins, although none are Hispanic.  (<u>Id.</u> ¶ 55).  On September 26, 2023, Ms. Joy

received from the EEOC a notice of right to sue letter (the "EEOC Notice").  (<u>Id.</u> ¶ 57).

On December 23, 2023, Ms. Joy filed the Complaint, in which she asserts claims under the

following laws: (i) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d <u>et</u> <u>seq.</u> (the "Title VI

Claim"); (ii) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> (the "Title VII Claim");

(iii) 42 U.S.C. § 1981 (the "Section 1981 Claim"); (iv) the New York State Human Rights Law, N.Y.

Exec. L. § 290 <u>et</u> <u>seq.</u> (the "NYSHRL Claim"); and (v) the New York City Human Rights Law, N.Y.C.

Admin. Code § 8-502 (the "NYCHRL Claim").  (ECF No. 1 at 2).

On April 15, 2024, CVTC filed the Motion.  (ECF Nos. 12–14).  On May 13, 2024, Ms. Joy

filed the Opposition, and on May 20, 2024, CVTC filed a reply.  (ECF Nos. 18; 20).  On October 24,

2024, the Honorable Margaret M. Garnett referred the Motion to the undersigned for this Report

and Recommendation.  (ECF No. 21).

### III. DISCUSSION

#### A. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Starr v. Sony BMG Music Ent., 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "In applying this standard, a court accepts as true all well-pled factual allegations but does not credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action.'"  Gottesfeld v. Anderson, No. 18 Civ. 10836 (PGG), 2020 WL 1082590, at *4 (S.D.N.Y. Mar. 6, 2020) (quoting Iqbal, 556 U.S. at 678).  The Court shall not give "effect to legal conclusions couched as factual allegations."  Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007). "Where a court can infer no more than the mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not 'nudged [plaintiff's] claims across the line from conceivable to plausible' – dismissal is appropriate."  Gottesfeld, 2020 WL 1082590, at *4 (quoting Twombly, 550 U.S. at 570).  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111

(2d Cir. 2010). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.'" Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). For a document to be integral to the complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[ ] in framing the complaint.'" DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Chambers, 282 F.3d at 153).

In deciding a motion to dismiss a pro se complaint, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam); see Aris v. N.Y. Guard, No. 22 Civ. 5019 (JLR), 2023 WL 5003581, at *2 (S.D.N.Y. Aug. 4, 2023) (noting that submissions from pro se litigants are generally "held to less stringent standards than formal pleadings drafted by lawyers"). Despite that consideration, "a pro se plaintiff must still plead enough facts to state a claim to relief that is plausible on its face." Gottesfeld, 2020 WL 1082590, at *5. While the Court has an obligation "to draw the most favorable inferences" from a complaint, it "cannot invent factual allegations that [the plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). The Court also "need not accept allegations that are 'contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.'" Tsinberg v. City of New York, No. 20 Civ. 749 (PAE), 2021 WL 1146942, at *4 (S.D.N.Y. Mar. 25, 2021) (quoting Fisk v. Letterman, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

### B. **Application**

In the Complaint, Ms. Joy asserts five race and national origin discrimination and retaliation claims:  the Title VI Claim, the Title VII Claim, the Section 1981 Claim, the NYSHRL Claim, and the NYCHRL Claim.  (ECF No. 1 at 2).  In her Opposition, Ms. Joy concedes that her NYSHRL and NYCHRL Claims should be dismissed, and, accordingly, the Court recommends dismissal of both claims with prejudice.  (ECF No. 18 at 1).

The Court turns to analyzing whether Ms. Joy has adequately pled claims under Title VI, Title VII, and Section 1981.

#### 1.  **Title VI Claim**

In support of her Title VI Claim, Ms. Joy alleges that CVTC, which receives federal funding, discriminated and retaliated against her by dismissing her from the Training Program based on her race and national origin.  (ECF No. 1 ¶¶ 1, 31–32, 47).  To support an inference that her dismissal was discriminatory, Ms. Joy relies on allegations that (i) CVTC staff stated that the role play sessions were "difficult for" Ms. Joy as a Spanish-speaker, and (ii) none of CVTC's trainees were of Hispanic origin.  (ECF No. 1 ¶¶ 25–26, 55–56).  In the Motion, as explained in further depth below, CVTC argues that the Complaint does not allege facts supportive of relief under Title VI.

##### a.  **Legal Standard**

"Title VI prohibits intentional discrimination based on race[, color, or national origin] in any program that receives federal funding."  DT v. Somers Cent. Sch. Dist., 348 F. App'x 697, 699 (2d Cir. 2009).  It provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  To plead a Title VI claim, a plaintiff must allege that the defendant received federal funding, that the defendant "discriminated against [her] on the basis of [race or national origin], that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions[.]" Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001).  A "naked allegation" that a plaintiff was treated differently from individuals outside of the protected class is "too conclusory" to survive a motion to dismiss. Kajoshaj v. N.Y.C. Dep't of Educ., 543 F. App'x 11, 14 (2d Cir. 2013) (citing Albert v. Carovano, 851 F.2d 561, 572 (2d Cir. 1988)).

Title VI claims "are subject to the burden-shifting framework" established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Johnson v. N.Y. Univ., No. 17 Civ. 6184 (VEC) (GWG), 2018 WL 3966703, at *6 (S.D.N.Y. Aug. 20, 2018), adopted by, 2018 WL 4908108 (S.D.N.Y. Oct. 10, 2018); see Lopez v. Webster Cent. Sch. Dist., 682 F. Supp. 2d 274, 279 (W.D.N.Y. 2010) ("Courts have applied the familiar McDonnell Douglas burden-shifting analysis to cases arising under Title VI."); accord Koumantaros v. City Univ. of N.Y., No. 03 Civ. 10170 (GEL), 2007 WL 840115, at *7 n.10 (S.D.N.Y. Mar. 19, 2007).  The first step of that framework requires a plaintiff to "successfully assert[ ] a prima facie case of [ ] discrimination against" the defendant. Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004).  If a plaintiff states a prima facie case, "defendants [then] have the burden of showing a legitimate, nondiscriminatory reason for their actions." Id.  If the defendant does so, the burden shifts back to the plaintiff to prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant

were not its true reasons, but were a pretext for discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

### b. Analysis

CVTC raises three arguments in support of the Title VI Claim's dismissal: that (1) Ms. Joy's allegations regarding its receipt of federal funds are conclusory and therefore deficient; (2) Ms. Joy "fails to allege how Title VI applies to CVTC or her claims"; and (3) Ms. Joy "makes no allegations that CVTC receives federal funds aimed primarily at providing employment." (ECF No. 13 at 13–14).  Ms. Joy opposes these arguments to differing degrees. (See ECF No. 18 at 4–10). The Court addresses them in turn.

### i. Federal Funding

CVTC first asserts that the Complaint "alleges only in conclusory fashion that [it] receives federal funds" and that these "mere conclusory statements" are insufficient to support Ms. Joy's Title VI Claim. (ECF No. 13 at 13).  Ms. Joy disputes that her allegations regarding federal funding are conclusory and adds that she "does not have to prove her factual allegation[s]" at the pleading stage. (See ECF No. 18 at 6).

Although Ms. Joy is correct that she need not prove her claims at this stage of the proceedings, the Court disagrees that her allegations regarding federal funding are adequate. Receipt of federal funds is a required element of every Title VI claim, see, e.g., Tolbert, 242 F.3d at 69, and merely alleging, without additional information, that an entity receives such funds therefore amounts to no more than a "[t]hreadbare recital[] of [an] element[] of a cause of action." Gottesfeld, 2020 WL 1082590, at *4.  To satisfy the federal funding element, Ms. Joy must provide additional allegations regarding the federal funding CVTC receives, such as its

specific source, or the "nexus between the use of [the] funds and the alleged discriminatory practice[.]" See Bloomberg v. N.Y.C. Dep't of Educ., 410 F. Supp. 3d 608, 625–26 (S.D.N.Y. 2019) (finding allegation that "the DOE was and is a recipient of federal funding" insufficient without further allegations regarding the "nexus between the . . . federal funds and the alleged discriminatory practice"); Assoko v. City of New York, No. 06 Civ. 11414 (RJH), 2009 WL 1108745, at *6 (S.D.N.Y. Apr. 24, 2009) (finding allegation that entity received funding from  U.S. Department of Housing and Urban Development sufficient to satisfy federal funding element).

### ii.    Application of Title VI to CVTC

CVTC next argues that only entities that (1) "receive[] federal funding as a whole" or (2) receive federal funding and are "principally engaged in providing health care (or one of the other services enumerated in 42 U.S.C. § 2000d-4a(3)(A)(ii))"—namely, education, housing, social services, or parks and recreation—may be held liable under Title VI, and that the Complaint fails to allege facts to support the law's application under either standard.  (See ECF No. 13 at 12) (quoting Do No Harm v. Pfizer Inc., 646 F. Supp. 3d 490, 509 (S.D.N.Y. 2022); 42 U.S.C. § 2000d-4a(3)(A)(ii).  In the Opposition, Ms. Joy highlights the Complaint's allegation that CVTC is an organization "that trains people to be rape crisis and domestic violence advocates" (ECF No. 18 at 5 (quoting ECF No. 1 ¶ 1)), and offers novel allegations that CVTC is a "not-for-profit organization committed to helping people heal from violent crime" that provides "a wide range of therapeutic services free of charge to anyone impacted by violence."  (Id.)

Taken together, Ms. Joy's allegations are sufficient to give rise to a plausible inference that CVTC is "principally engaged" in the provision of social services and is therefore subject to Title VI.  See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Nw. Ind., 786 F.3d 510,

528 (7th Cir. 2015) (stating that, in context of Rehabilitation Act claim, "merely alleging that the [entity] received federal funds and [was] engaged in [covered] activities . . . would have been sufficient for pleading purposes"); Doe v. Salvation Army in U.S., 685 F.3d 564, 571 (6th Cir. 2012) ("The phrase "principally engaged" has been interpreted in other statutory contexts as referring to the primary activities of a business, excluding only incidental activities."). Accordingly, Ms. Joy has plausibly alleged that Title VI is applicable to CVTC.

### iii.    **Employment Practices Theory**

Finally, CVTC argues that, to the extent Title VI applies and Ms. Joy is complaining about employment practices, it is not Ms. Joy's employer and that, even if it were, the claim would fail. (ECF No. 13 at 14).  In support of this argument, CVTC invokes Section 2000d-3 of Title VI, which provides that nothing in it "shall be construed to authorize action under [Title VI] by any department or agency with respect to any employment practice of any employer . . . except where a primary objective of the Federal financial assistance [the employer receives] is to provide employment."  42 U.S.C. § 2000d-3.  Although Section 2000d-3 refers only to agency action, the Second Circuit has held that the statute also applies to private actions.  See Ass'n Against Discr. in Empl., Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir. 1981); Johnson v. Cnty. of Nassau, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006).  Accordingly, "[f]or a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment."  Ass'n Against Discr. in Empl., Inc., 647 F.2d at 276.  As CVTC observes, the Complaint fails to allege any connection between the federal funding it supposedly receives and its employment practices, "as opposed to any of the other purposes for which [CVTC] uses federal funding[.]"  Miller-Sethi

v. City Univ. of N.Y., No. 21 Civ. 8591 (JPO), 2023 WL 419277, at *8 (S.D.N.Y. Jan. 26, ~~2023)(dismissing Title~~ VI claim for failure to allege nexus between federal funds and employment). Accordingly, to the extent Ms. Joy seeks relief based on her dismissal from the Training Program on the basis that her dismissal amounted to an unlawful employment practice, the Complaint fails to state any viable claim under Title VI. See Sherman v. Yonkers Pub. Sch., No. 21 Civ. 7317 (CS), 2023 WL 137775, at *7 (S.D.N.Y. Jan. 9, 2023) (dismissing Title VI claim where "Plaintiff ha[d] not alleged, even in conclusory fashion (which in any event would not suffice), that the federal funds received by [the defendant] were primarily intended to provide employment").

\* \* \*

Consistent with the above, although the Complaint allows for an inference that Title VI applies to CVTC, it does not contain sufficient factual allegations regarding CVTC's receipt of federal funding or suggest that CVTC may be held liable under Title VI based on its employment practices. Because the deficiencies in Ms. Joy's allegations may be fixable through amendments to the Complaint, however, we respectfully recommend that the Motion be GRANTED as to the Title VI Claim but that the claim be dismissed without prejudice and with leave to amend. See Verdi v. City of New York, 306 F. Supp. 3d 532, 546 (S.D.N.Y. 2018) (dismissing Title VI claim without prejudice and with leave to amend where complaint lacked sufficient allegations regarding defendant's receipt of federal funding).

### 2. Title VII Claim

Ms. Joy's Title VII Claim is premised on her assertion that CVTC was her employer and engaged in discrimination and retaliation based on her race and national origin, i.e., dismissing her from the Training Program because her primary language is Spanish. (See generally ECF

No. 1). CVTC argues that it was not Ms. Joy's employer and is not covered by Title VII. (ECF No. 13 at 9–11). The Court agrees that Ms. Joy has not stated, and cannot state, a claim under Title VII.

### a. Legal Standard

Section 2000e-2(a) of Title VII provides:

It shall be an unlawful employment practice for an employer—

(1) to . . . discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, . . . or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, . . . or national origin.

42 U.S.C. § 2000e-2. Title VII defines an employee as "an individual employed by an employer[,]" an "elliptical statutory definition" that the Second Circuit has explained has as "'a prerequisite . . . that the individual have been hired in the first instance.'" York v. Ass'n of Bar of City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002) (quoting O'Connor v. Davis, 126 F.3d 112, 115 (2d Cir. 1997)). In addition, "the question [] whether someone is or is not an employee under Title VII usually turns on whether he or she has received direct or indirect remuneration from the alleged employer." Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist., 180 F.3d 468, 473 (2d Cir. 1999). If the purported employee does not obtain any financial benefit from the purported employer, "no 'plausible' employment relationship of any sort can be said to exist" because compensation from the employer to the employee "is an essential condition to the existence of an employer-employee relationship." O'Connor, 126 F.3d at 115–16. The following factors are indicative of a "financial benefit" for Title VII purposes: "salary or other wages; employee benefits, such as health insurance; vacation; sick pay; or the promise of any of the foregoing." York, 286 F.3d at

126. "[B]enefits must meet a minimum level of significance, or substantiality, in order to find an employment relationship in the absence of more traditional compensation." Id. Benefits may satisfy the "remuneration test" if they are in the form of "(1) a retirement pension, (2) life insurance, (3) death benefits, (4) disability insurance, and (5) some medical benefits." Pietras, 180 F.3d at 471.

### b. Analysis

Ms. Joy fails to state a plausible Title VII Claim for two reasons. First, she alleges throughout the Complaint that the ED—not CVTC—was her employer. For example, she alleges that she "was employed" as an "Outreach Services Associate for the Infectious Diseases Department" of the ED "during all relevant times[.]" (ECF No. 1 ¶ 4). She also alleges that "her employer recommended and approved her for" the Training Program "run by . . . CVTC"—an allegation that only makes sense if the ED, not CVTC, is her "employer." (Id. ¶ 1). Similarly, she alleges that her "employer approved" her participation in the Training Program that CVTC runs. (Id. ¶ 9; see also id. ¶ 36 (alleging that Ms. Joy was "scared that her employer might terminate her because she was dismissed from a training program"); ¶ 41 (alleging that Ms. Joy "suffered scrutiny in her work (current employer) for having been dismissed" from the Training Program)). Because these specific allegations in the Complaint contradict Ms. Joy's conclusory assertions that CVTC was her "employer" for Title VII purposes, the Court need not accept them. See Tsinberg, 2021 WL 1146942, at *4 ("The Court need not accept allegations that are contradicted by other matters asserted . . . by a plaintiff in drafting the complaint.").

Second, Ms. Joy's allegations fail to satisfy the "remuneration test" set forth above. See York, 286 F.3d at 126. The only "benefits" Ms. Joy describes are those she hoped the ED would

provide her if she completed the Training Program and became part of the SAFE Team.  (See, e.g., ECF No. 1 ¶ 1 (alleging that, due to dismissal from the Training Program, Ms. Joy was "prevent[ed] from applying for a better position that came with higher compensation and benefits"); id. ¶ 35 (same)).   At most, Ms. Joy's allegations give rise to the inference that, while she was in the Training Program, she hoped to become a volunteer advocate for CVTC; any incidental benefits she received as a trainee were far from "the sort of substantial benefits" required to demonstrate status as an employee under Title VII.   See York, 286 F.3d at 126 (explaining that plaintiff who received "merely incidental" benefits of clerical support and networking as part of her volunteer position did not allege employer-employee relationship for Title VII purposes).[2]

Given Ms. Joy's concessions that the ED—not CVTC—was her employer, she has not, and cannot, state a plausible Title VII claim against CVTC.   Accordingly, we respectfully recommend that the Title VII Claim be DISMISSED WITH PREJUDICE and without leave to amend.

### 3.  Section 1981 Claim

Ms. Joy contends that she had an "agreement" with CVTC, which "guaranteed" to provide her with 40 hours of domestic violence advocacy training.  (ECF No. 1 ¶¶ 28, 59).   Without conceding any other elements of a Section 1981 Claim, CVTC argues that Ms. Joy has failed to allege the existence of any contract of which CVTC deprived her based on her race or national origin.  (ECF No. 13 at 15).

---

[2] Given these two fundamental defects in Ms. Joy's Title VII Claim, the Court need not analyze CVTC's alternative argument that the Training Program is not covered by Title VII (ECF No. 13 at 11), because whether Ms. Joy's participation in the Training Program was "part of the job" is a fact-intensive question inappropriate for the pleading stage.  See La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 211 (2d Cir. 2010) (reversing dismissal of Title VII claim based on allegation that employer prevented Black plaintiff from participating in training that he alleged was "part of the job" and white employees were permitted to attend, noting that "[t]raining is a benefit of employment that receives protection under Title VII").

## a. **Legal Standard**

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and extractions of every kind, and to no other.

42 U.S.C. § 1981(a).  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  "The rights protected by [Section 1981] are protected against impairment by nongovernmental discrimination[.]"  Id. at § 1981(c).  "Section 1981 does not prohibit discrimination on the basis of gender[,] [ ] religion, national origin, or age[.]"  Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998); see Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) (holding that § 1981 does not prohibit alleged discrimination as to religious expression); Williams v. Victoria's Secret, No. 15 Civ. 4715 (PGG) (JLC), 2017 WL 1162908, at *9 (S.D.N.Y. Mar. 28, 2017) (dismissing § 1981 claim based on alleged age discrimination).

To plead a Section 1981 claim, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)."  Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).

"To survive a motion to dismiss, a [Section 1981] plaintiff must specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'"  Bentley, Jr.

v. Mobil Gas Station, 599 F. App'x 395, 396 (2d Cir. 2015) (quoting Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir.1994)).  "Direct evidence of discriminatory intent is not required to satisfy the second element of a section 1981 claim, as a plaintiff may instead rely on circumstantial evidence that supports an inference of discrimination."  Oparaji v. ABN AMRO Mortg. Grp., Inc., No. 19 Civ. 1650 (MKB), 2020 WL 9816011, at *14 (E.D.N.Y. Sept. 18, 2020) (citing Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001)).

"An inference of discrimination may be drawn where 'similarly situated' patrons who are not members of the relevant protected class are treated differently than the plaintiffs who allege discrimination under section 1981."  Oparaji, 2020 WL 9816011, at *14 (citing Lizardo, 270 F.3d at 101).  A plaintiff complaining of alleged disparate treatment, however, "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  Johnson v. Andy Frain Servs., Inc., 638 F. App'x 68, 70 (2d Cir. 2016).

"A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss."  Bentley, Jr., 599 F. App'x at 396 (citing Albert v. Carovano, 851 F.2d 561, 572 (2d Cir. 1988)).  "Finally, 'a complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination.'"  Akyar v. TD Bank US Holding Co., No. 18 Civ. 379 (VSB), 2018 WL 4356734, at *3 (S.D.N.Y. Sept. 12, 2018) (quoting Hicks v. IBM, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999)).

**b.  Analysis**

CVTC argues that it provided the Training Program to Ms. Joy "for free" and was paid by the ED for her to participate, so Ms. Joy has failed to allege the existence of a contractual relationship.  (ECF No. 13 at 15).

Section 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."  Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).  A Section 1981 plaintiff "must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's."  Id. at 480.  Construing the Complaint as favorably as possible, the Court finds that Ms. Joy has alleged—barely—the existence of a contractual agreement with CVTC under this standard.  She lists the steps she took to register for, prepare for, and participate in the Training Program, and that CVTC sent her an "acceptance letter" with the training hours and dates.  (ECF No. 1 ¶¶ 10, 11, 16, 17, 27, 28).  And she alleges that CVTC dismissed her from the Training Program for, apparently, not speaking English well enough, thus preventing her from completing the Program's objective—certification as a domestic violence advocate.  (Id. ¶¶ 6, 25–26, 30–31).  A reasonable reading of Ms. Joy's allegations is that CVTC prevented her from completing the Training Program based on her race—Hispanic—which is sufficient to plead a Section 1981 claim for purposes of Federal Rules of Civil Procedure 8 and 12(b)(6).  See Mahmud v. Nassau Cnty. Med. Ctr., 191 F. Supp. 2d 286, 300 (E.D.N.Y. 2000) (denying motion to dismiss Section 1981 claim based on denial of hospital privileges based on race), reconsideration denied, 496 F. Supp. 2d 266, 274 (E.D.N.Y. 2007).

The Second Circuit has recognized the existence of an implied contract for Section 1981 purposes where a student who enrolls at an educational institution and "complies with the terms prescribed by the university and completes the required courses[,]" such that the institution "must award him a degree."  Papelino v. Albany Coll. of Pharm. of Union Univ., 633 F.3d 81, 93 (2d Cir. 2011).  In such a case, "a racially motivated dismissal thus runs afoul of § 1981."  Evans v. Columbia Univ. of the City of N.Y., No. 14 Civ. 2658 (NSR), 2015 WL 1730097, at *6 (S.D.N.Y. Apr. 13, 2015) (denying motion to dismiss Section 1981 claim based on alleged racially motivated termination from university).  A similar rationale applies to CVTC's alleged racially motivated dismissal of Ms. Joy from the Training Program, which plausibly alleges a Section 1981 Claim.  Furthermore, CVTC cites no authority for its suggestion that Ms. Joy, as opposed to the ED, had to pay herself for the Training Program for a contract to exist for Section 1981 purposes.  (See ECF No. 13 at 15).  Accordingly, we respectfully recommend that the Motion be DENIED as to the Section 1981 Claim.

### IV. CONCLUSION

For the reasons set forth above, we respectfully recommend that the Motion be GRANTED IN PART and DENIED IN PART as follows:

1. The Title VI Claim should be DISMISSED WITHOUT PREJUDICE and with leave to amend.

2. The Title VII Claim should be DISMISSED WITH PREJUDICE and without leave to amend.

3. The Motion should be DENIED as to the Section 1981 Claim.

4. The NYSHRL and NYCHRL Claims should be DISMISSED WITH PREJUDICE.

Dated:        New York, New York
              December 2, 2024

                                        _____
                                        **SARAH L. CAVE**
                                        **United States Magistrate Judge**

*            *            *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Garnett.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  If Ms. Joy does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, she may request copies from CVTC's counsel.  <u>See</u> Local Civ. R. 7.2.